# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

MICHAEL DON LEATHERWOOD,   )
                                        )

          Petitioner,      )

vs.                               )

                                        )   Case No. CIV-13-1149-M

JOE M. ALLBAUGH, Interim   )
Director of the Oklahoma      )
Department of Corrections,    )

                                        )

         Respondent.[1]    )

## REPORT AND RECOMMENDATION

## I.   Background.

Michael Leatherwood (Petitioner), a state prisoner appearing through counsel, petitions under 28 U.S.C. § 2241 for habeas relief from the state court's revocation of his suspended sentences. Doc. 1.[2] United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).

---

[1]    Petitioner is incarcerated at Lawton Correctional Facility, a private prison in Oklahoma. Under Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, Joe M. Allbaugh, Interim Director of the Oklahoma Department of Corrections, is the proper respondent and is substituted as the named Respondent in this case. *See generally* Fed. R. Civ. P. 25(d).

[2]    Page citations reflect this Court's CM/ECF pagination and designation. Unless otherwise indicated, quotations are reproduced verbatim.

## A.    State court proceedings.

### 1.    Convictions and sentences.

The State of Oklahoma charged Petitioner in the District Court of Oklahoma County, Case No. CF-2007-4162, with two counts of Rape in the First Degree and four counts of Rape in the First Degree by Instrumentation. Original Record (OR) 1-5, 6-9. Petitioner, represented by attorney Scott Adams, entered a blind plea of guilty before Judge Kenneth Watson in May 2009, *id.* at 11-17, and described the factual basis for that plea:

> On May 19, 2007 in OK County I raped my wife against her will, by putting my penis in her vagina and anus and I also repeatedly raped my wife by putting ice in her vagina and anus and by forcibly [sic] putting a cork and bottle in her vagina – causing injury to her.

*Id.* at 15.

Judge Watson sentenced Petitioner on his plea, *id.* at 18-21, to six concurrent twenty-year terms, "suspended except as to the first 90 days to be served in the Oklahoma County Jail, the remainder of the sentence(s) to be suspended under the terms set forth in the probation guidelines." *Id.* at 19. Petitioner acknowledged "the imposition of a suspended sentence may be revoked and the entire judgment and sentence enforced without suspension if [he] violate[s] any city, state or federal law and/or the conditions of probation ordered by the court per any separate order and incorporated as part of this order." *Id.* at 20.

Judge Watson imposed a number of conditions in Petitioner's Judgment and Sentence, *id.* at 23-28, including Additional Conditions of Probation and Special Probation Conditions for Sex Offenders. *Id.* at 28, 10, 22. Pertinent here, Petitioner agreed in Condition No. 17, Special Probation Conditions for Sex Offenders, "as consideration for the imposition of a probated sentence, either in whole or in part" that he would "[n]ot date, socialize, or enter into a romantic or sexual relationship with any person who has children under the age of eighteen (18) years present in their residence or custody at any time." *Id.* at 22. Petitioner acknowledged his "[f]ailure to comply with [the] condition[] may result in the revocation . . . of the probated sentence." *Id.*[3]

Judge Watson ordered Petitioner's ninety-day county jail term to begin in January 2010. *Id.* at 19, 24.

### 2. First revocation application.

In September 2009 — mid-way through the period following Petitioner's plea and sentencing and before the scheduled start of his county jail term — the State applied to revoke his suspended sentences, *id.* at 29-30, because of his failure to comply with certain conditions of those sentences, including

---

[3]     Petitioner has never sought to withdraw his guilty pleas or to appeal his suspended sentences, including the conditions of those sentences. *See* Rule 4.2, Rules of the Oklahoma Court of Criminal Appeals, Okla. Stat. tit. 22, Ch. 18, App. (a defendant must file an application to withdraw a guilty plea within ten days from the pronouncement of the Judgment and Sentence in order to appeal from any conviction on a plea of guilty).

Condition No. 17 of the Special Probation Conditions for Sex Offenders: that he would "refrain from dating, socializing, or entering into a romantic or sexual Relationship with any person who has children under the age of eighteen (18) Years present in their residence or custody at any time." *Id.* at 29.

Judge Watson held a revocation hearing on January 8, 2010. *See* Transcript of Revocation Hearing Proceedings on January 8, 2010 (First Hearing Tr.). Attorneys Josh Welch and Robert Johnson represented Petitioner. *Id.* at ii. Regina Wood, the mother of a six and a four-year-old, testified she was present at Petitioner's sentencing and had dated him thereafter, *id.* at 11-16, knowing "that it was against the rules" to do so. *Id.* at 16. When asked about her current relationship with Petitioner – who had been in jail since at least October 2009, *id.* at 5 – Ms. Wood testified that "currently he's in jail but I would say that we are in a relationship." *Id.* at 16.

In announcing his order to revoke five years of Petitioner's suspended sentences, Judge Watson called Petitioner to the bench, and told him he was ordering the revocation "because you won't follow my rules." *Id.* at 32. He stated:

> You, know, I can't tell you how to live your life. I can't tell you who to be with. I'm not going to stand here and try to direct how you live a relationship. I protect children that are innocent, that have nothing to do with it. Whether your female companions want to allow you to do whatever it is, as long as it's not criminal,

4

that's fine with me.  But it's the children and that Sex Offender
Registration Act says you can't be around them.  Now, that's not
going to change.  This is the rule.

*Id.* at 33.  Judge Watson then continued:  "[T]hey put you in jail and you're

doing the same thing over there.  And it's not the person, because I didn't

want [Ms. Wood] to have to be drilled because of you.  It's her children."  *Id.*

at 34.  Judge Watson informed Petitioner that "you may not even be a threat

but the law says that as a sex offender you cannot have a relationship with a

person who has minor children."  *Id.*

Judge Watson asked Petitioner if he had any questions and told him he

was "going to the penitentiary . . . because you don't want to follow the rules."

*Id.* at 35.  Judge Watson stated that "I hope your female friend back in the

back gets it" and that "she's going to have to . . . completely abandon her

children to be with you."  *Id.*  Petitioner said he had no questions.  *Id.* at 36.

Petitioner did not appeal this partial revocation of his sentences.

### 3.    Second revocation application.

Approximately three months after the initial revocation, the State filed

a second application to revoke the remainder of Petitioner's suspended

sentences.  OR 71-150.  On April 16, 2010, the State amended its application,

*id.* at 151-231, and alleged that "[s]ince said Revocation, [Petitioner] has

intentionally, and in a manner attempting to deceive this Honorable Court,

continued to violate Rule #17 of the Special Conditions for Sex Offenders by

5

continuing his romantic relationship and/or to socialize with Regina Wood while she has minor children present in her residence or custody." *Id.* at 152. Judge Watson recused and transferred the matter for reassignment; the Chief Judge then assigned the case to Judge Bass-LeSure. *Id.* at 234.

Scott Adams represented Petitioner at the August 3, 2010 hearing on the State's second revocation application. *See* Transcript of Revocation Hearing Proceedings on August 3, 2010 (Second Hearing Tr.), at 1. Judge Bass-LeSure admitted evidence offered by the State to show that after the January 8, 2010 revocation proceedings and while Petitioner remained incarcerated in the Oklahoma County jail, Petitioner and Ms. Wood – who had minor children in her custody or residence – continued their relationship through telephone conversations, correspondence between Petitioner and Ms. Wood, correspondence from Petitioner to Ms. Wood's daughters, and Ms. Wood's visits to the jail. *Id.* at 34-42, 42-43, 43-45, 45-47, 49-52, Exs. 6, 16, 20-30, 35-37. Judge Bass-LeSure also considered the State's evidence that Petitioner and Ms. Wood had devised a scheme allowing Petitioner to call Ms. Wood without being identified in jail records by using the log-in information of other inmates. *Id.* at 18-20, 32-42, 59-62, Exs. 16, 20, 35-37. Addressing Petitioner, Judge Bass-LeSure stated that after "Judge Watson told you not to have any relationship or socialize in any way with a person that has children in their custody," "you went through great lengths to hide the fact

that you were talking to [Ms. Wood]." *Id.* at 59-60. She further stated that "looking at the totality of it you knew you were in violation of [Condition No. 17]." *Id.* at 60. Petitioner acknowledged having had "conversation with someone that I adored" and said they "talked about socker [sic] games and things of that nature." *Id.* Judge Bass-LeSure found a preponderance of the evidence supported the second revocation application and revoked Petitioner's suspended sentences in full. *Id.* at 63, 98.

### 4. State court appellate proceedings.

Petitioner appealed the August 3, 2010 revocation of the balance of his suspended sentences to the Oklahoma Court of Criminal Appeals (OCCA), Case No. RE-2010-780; the OCCA denied Petitioner's appeal and affirmed the revocation of his suspended sentences. Doc. 2, at Ex. 1. Petitioner subsequently applied for and was denied post-conviction relief in Oklahoma County District Court; the OCCA affirmed that denial in Case No. PC-2012-638. *Id.* at Ex. 2.

### B. Petition for federal habeas relief.

Petitioner then petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking relief from the state court's August 3, 2010 revocation of the remaining fifteen years of his suspended sentences. Doc. 1. Petitioner supported his petition with a brief. Doc. 2. Respondent filed the

state court record and a response to the petition. Docs. 12, 13, 14. Petitioner replied. Doc. 19.

Petitioner subsequently sought (1) release on bond, Doc. 20; (2) to supplement his petition under Fed. R. Civ. P. 15(d) with the affidavit of Justin Jones, a former Oklahoma Department of Corrections (DOC) director, who opines that Petitioner "'would not have been subject to suspended sentence rules and conditions while serving incarcerated time on the [first] revocation and would not have been considered a probation violator subject to revocation,'" Doc. 21, at 11; and (3) to supplement his petition with the affidavit of Judge Watson – the judge who accepted Petitioner's plea, sentenced him, and revoked five years of his suspended sentences – who states that "after the January 8, 2010 revocation of five years, Petitioner was not subject to the release conditions of probation while he was incarcerated for the five years." Doc. 27, at 4. Responses and replies were ordered and filed, and Petitioner responded to the undersigned's order for additional briefing on the standard of review governing this action. Docs. 22, 23, 24, 25, 26, 28, 29, 30, 31.

The undersigned denied Petitioner's motion for bond on September 29, 2015, Doc. 32, and now, after a full and careful review of the petition, the motions to supplement the petition, the briefs, and the state court record,

recommends denial of the petition and the motions to supplement it. Docs. 1, 21, 27.

## II. Discussion.

### A. Federal habeas review of a state court suspended sentence revocation.

#### 1. Scope of review.

Federal habeas relief is available to Petitioner only if "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Thus, '[f]ederal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.'" *Johnson v. Patton*, 580 F. App'x 646, 650 (10th Cir. 2014) (quoting *Wilson v. Corcoran*, 562 U.S. 1, 1 (2010)).

"The Due Process Clause . . . imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano*, 471 U.S. 606, 610 (1985) (citing *Bearden v. Georgia*, 461 U.S. 660, 666 & n.7 (1983)). Supreme Court "precedents have sought to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial." *Black*, 471 U.S. at 613 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 787 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489-90 (1972)). Instead, the Due Process Clause of the Fourteenth Amendment requires "final revocation [to] be

proceeded by a hearing . . . ." *Id.* at 611. "The probationer is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation." *Id.* at 612. "The probationer is also entitled to cross-examine adverse witnesses" and "has a right to the assistance of counsel in some circumstances." *Id.* And, the Court's decision in "*Bearden v. Georgia* recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution." *Id.* at 611.

Federal courts do not grant habeas relief for errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. But a state court's failure to follow its own rules warrants habeas relief if such failure also constituted a violation of due process guaranteed by the federal Constitution. *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). A petitioner must show that "the deprivation occasioned by the state's failure to follow its own law [is] 'arbitrary in the constitutional sense'; that is, it must shock the judicial conscience." *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir.1999) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 129-30 (1992)).

## 2. Standard of review.

Petitioner's challenge is to the revocation of his suspended sentences, not to the imposition of those sentences. Doc. 1. "A challenge to the execution of a sentence is properly brought under § 2241." *Johnson*, 580 F. App'x at 649 (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir.1997)); *see Bogue v. Vaughn*, 439 F. App'x 700, 701 n.3 (Petitioner "properly framed his habeas petition as pursuant to 28 U.S.C. § 2241 because he is challenging the execution of his sentence – the revocation of 365 days earned credit."); *Stoltz v. Sanders*, Nos. 00–6188, 00–6288, 2000 WL 1730894 (10th Cir. 2000) (unpublished op.) ("To the extent [petitioner] is challenging the revocation of his [suspended] sentence . . . it challenges the execution of his sentence rather than its validity.").

"Despite the fact that the Oklahoma courts arguably addressed the merits of [Petitioner's] current claim, []he is neither challenging a state conviction nor sentence and as a result, § 2254 is inapplicable." *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007). "The deferential standard of review contained within § 2254 is . . . only properly invoked when an individual in state custody collaterally attacks the validity of a state conviction and/or sentence." *Id.* at 1234 (citing *McIntosh*, 115 F.3d at 811); *see Johnson v. Patton*, 580 F. App'x 646, 649-50, 652, 654 (10th Cir. 2014) (stating "[o]ur review of a § 2241 dismissal is de novo; the deference

11

provisions of 28 U.S.C. § 2254(d) are not applicable" where petitioner alleged federal constitutional violation in ODOC's failure to apply jail-time credits and street time credits) (citing *Walck*, 472 F.3d at 1235); *Bogue*, 439 F. App'x at 701 (10th Cir. 2011) (reviewing a § 2241 petition de novo where state prisoner denied access to videotape recordings of incident related to his disciplinary hearing, stating: "Because we are reviewing the denial of a § 2241 petition, 'the deference normally accorded state court judgments under § 2254 does not apply. Instead, we review habeas claims made pursuant to § 2241'" de novo. (quoting *Walck*, 472 F.3d at 1235)); *Mendoza v. Tamez*, 451 F. App'x 715, 716-17 (10th Cir. 2011) (where petitioner challenged due process afforded to revocation of good-time credits under § 2241, stating that "[w]e review habeas petitions brought under [§ 2241] de novo" and denying relief (citing *Walck*, 472 F.3d at 1235)); *see also Hopkins v. McCollum*, No. 13-679, Doc. 16 (W.D. Okla. Dec. 21, 2015) (unpublished order adopting report and recommendation), 2015 WL 9312125, at *4 (W.D. Okla. Nov. 25, 2015) (unpublished report and recommendation) (stating "no deference should apply" under *Walck* and finding "no discernible reason why *Walck* should not apply to a § 2241 petition challenging the revocation of a suspended sentence"). *But see Henderson v. Scott*, 260 F.3d 1213, 1215 (10th Cir. 2001) (noting habeas petition challenging right to annual reconsideration for parole "probably should be considered pursuant to 28 U.S.C. § 2241" and stating

that "[a]lthough we analyze Mr. Henderson's claim under § 2241, we still accord deference to the OCCA's determination of the federal constitutional issue").[4] The undersigned reviews Plaintiff's claims for constitutional error de novo. *See Walck*, 472 F.3d at 1234-35.

---

[4] The parties have briefed the standard of review. *See, e.g.*, Docs. 2, 12, 19, 29, 30. The State cites *Henderson*, 260 F.3d at 1214, to support its theory that this Court reviews the petition with AEDPA deference. Doc. 12, at 12. In *Henderson*, the Tenth Circuit construed petitioner's § 2254 petition as one under § 2241, because he alleged an Ex Post Facto Clause violation in the decreased frequency of his parole reconsideration dates. 260 F.3d at 1214. The court continued: "Although we analyze [petitioner] Henderson's claim under § 2241, we still accord deference to the OCCA's determination of the federal constitutional issue." *Id.* at 1215 (citing *Montez v. McKinna*, 208 F.3d 862, 869 (10th Cir. 2000) (noting that that "state court process under § 2241" entails a "more onerous burden" that is "consistent with notions of comity and deference to state adjudicatory procedures embodied throughout the AEDPA")).

The State also relies on the unpublished *Williams v. Addison*, No. CIV-06-1364-R, 2009 WL 1752172 (W.D. Okla. June 19, 2009) (unpublished order adopting report and recommendation). Doc. 12, at 12. There the district court agreed with the magistrate judge's construal of a § 2254 petition challenging the revocation of his suspended sentences as a § 2241 petition. *Williams*, 2009 WL 1752172, at *1-2. Regarding the standard of review in *Williams*, the district court acknowledged that the magistrate judge applied AEDPA deference, and that Petitioner "does not object thereto." 2009 WL 1752172, at *2. Uncertain that a petitioner can impliedly consent to a standard of review, the undersigned does not rely on that part of *Williams*, and notes that here, Petitioner objects to the application of AEDPA deference.

Of concern is what the State does not address. The State fails to acknowledge Petitioner's arguments or his cited case law. As it has previously, though given multiple opportunities, the State "fail[s] to cite contrary authority from the Tenth Circuit Court of Appeals," namely the published *Walck* decision. *See Thomas v. Parker*, No. CIV-08-1321, 2009 WL 995547, at *4 (W.D. Okla. Apr. 13, 2009) (unpublished order adopting report and recommendation) (chastising counsel for repeated failure to cite or

13

## B. Petitioner's grounds for relief.

### 1. Ground One – Revocation violated Petitioner's right to due process.

Petitioner contends "[t]he revocation of fifteen years of [his] suspended sentences resulted in the violation of [his] right to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the Oklahoma Constitution, Art. 2, § 7." Doc. 1, at 6; Doc. 2, at 21.[5] He makes two specific claims.

### a. Conditions of probation did not apply to Petitioner while he was incarcerated.

Petitioner first claims "the conditions of probation applied to times when he was on release in the community on probation, but during the time he was incarcerated for five years the probation conditions could not apply[.]" Doc. 1, at 7. The OCCA rejected the claim[6] on direct review, finding

---

distinguish contrary authority, including *Walck*, and cautioning counsel to "re-familiarize himself with Rule 3.3(a)(2), Rules of Professional Conduct, Okla. Stat. tit. 5, ch. 1, App. 3-A"). Here, the State *never* cites nor distinguishes *Walck* or any of the subsequent unpublished case law applying *Walck*. So too here the undersigned reminds counsel of her ethical obligation to do so under the Rules of Professional Conduct.

[5]     Petitioner states in his reply brief that "his whole case is based on his claim that the August 3, 2010, revocation constituted a violation of rights guaranteed to him under the United States Constitution." Doc. 19, at 2.

[Petitioner] was at all times on each count serving but one sentence on one judgment, said sentences to run twenty years. *Crowels v. State*, 1984 OK CR 29, ¶ 8, 675 P.2d 451, 453. Until those suspended sentences have been fully served, [Petitioner] remains under the jurisdiction of the trial court with sentences subject to revocation. *Demry v. State*, 1999 OK CR 31, ¶ 12, 986 P.2d 1145, 1147. [Petitioner] was specifically told by the District Court that he "cannot have a relationship with a person who has minor children" yet he blatantly disregarded that admonition. His first argument under Proposition I is denied.

Doc. 2, Ex. 1, at 5.

In this Court, Petitioner argues that "[t]he decision to revoke probation 'lies with the trial court which may do so in its sounds discretion *in accord with statutory requirements and considerations of fundamental fairness.*'" Doc. 2, at 22-23 (quoting *Fain v. State*, 503 P.2d 254, 255-56 (Okla. Crim. App. 1972)). He maintains "[i]n [his] case the statutory requirements were violated and the fundamental fairness to which Petitioner was entitled was violated . . . ." *Id.* Respondent contends Petitioner's claim is "grounded in an alleged error of Oklahoma law" and submits that he has not demonstrated a denial of fundamental fairness warranting federal habeas relief. Doc. 12, at 16-17.

The undersigned agrees with Respondent. Petitioner identifies no portion of Oklahoma's *statutory revocation procedure* that the state court

---

[6]    The OCCA framed Petitioner's first claim to be that "he was not on probation at the time of the alleged violation of the Special Conditions of Probation for Sex Offenders and thus his suspended sentence could not be revoked." Doc. 2, Ex. 1, at 5.

failed to follow or claim that Oklahoma's *statutory revocation procedure* fails to conform to the federal procedural due process standards discussed above. *See* § II.A.1; *see also* Okla. Stat. tit. 22 § 991b(A), (D). Instead, Petitioner submits that "[t]he court's action in revoking Petitioner's suspended sentences based wholly on the alleged violation of a release condition of probation alleged to have occurred while Petitioner was imprisoned serving the incarceration portion of the sentence arbitrarily deprived him of his liberty and constituted a denial of his right to due process." Doc. 2, at 38. He terms Condition No. 17 "a non-criminal, release condition" and "a release condition[] of probation" rather than a condition of his suspended sentences.[7] *Id.* at 23, 24. He points to Oklahoma's statutory definition of probation and argues that under that definition "a suspended sentence and probation are two separate matters." *Id.* at 29. He parses the meaning of confinement, supervision, and release under the State's sentencing statutes to show he "was not subject to conditions applicable to time he was not released into society." *Id.* at 32.

---

[7]     In Oklahoma, "when a defendant is convicted of a crime and no death sentence is imposed, the court is empowered to "[s]uspend the execution of sentence in whole or in part, with or without probation." Okla. Stat. tit. 22 § 991a(A)(1). "The court, in addition, may order the convicted defendant at the time of sentencing or at any time during the suspended sentence to do one or more" described actions as well as "any other provision specifically ordered by the court." *Id.* § 991a(A)(1)(hh).

Petitioner also maintains the decisions the OCCA cited – *Crowels* and *Demry* – "are fundamentally distinguishable from Petitioner's claim," because those defendants committed, respectively, "a felony crime" and a "misdemeanor crime" while incarcerated whereas Petitioner "was alleged to have committed a probation violation while he was incarcerated." Doc. 19, at 5-6. He claims these interpretations of Oklahoma's sentencing statutes "support only that the Court has jurisdiction over Petitioner and authority to consider revocation – facts that Petitioner has not contested." *Id.* at 5.

Petitioner establishes by his citations to state sentencing statutes – and by his attempts to include the opinions of a former state corrections' director and a state district judge on the issue[8] – that his initial claim hinges on the interpretation of those sentencing statutes. But a habeas petitioner's claim alleging a "'due process' violation" resulting from the unlawful suspension of

---

[8]    Petitioner has moved to supplement his petition and supporting brief with the affidavit of Justin Jones, a former DOC director, who opines that Petitioner "'*would not have been subject to suspended sentence rules and conditions while serving incarcerated time on the [first] revocation and would not have been considered a probation violator subject to revocation.*'" Doc. 21, at 11. He also seeks to add the affidavit of Judge Kenneth Watson – the judge who accepted Petitioner's plea, sentenced him, and revoked five years of his suspended sentence – who states that "after the January 8, 2010 revocation of five years, Petitioner was not subject to the release conditions of probation while he was incarcerated for the five years." Doc. 27, at 4. Regardless of whether habeas procedure permits the requested supplementation – a point the parties dispute, *see* Docs. 23, 26, 30, 31 – the two opinions are interpretations of state law and are not material to the claim of federal error. Consequently, the undersigned recommends the denial of Petitioner's motions, Docs. 21 and 27, to supplement.

his sentence under state law "amounts to a challenge of a pure issue of state law and, therefore, cannot be the basis of federal habeas relief." *Gist v. Evans*, 587 F. App'x. 490, 493 (10th Cir. 2014). "As a general rule, federal habeas relief is not available for errors in the interpretation of state sentencing law." *Pimenta v. Crandell*, No. 99-2055, 1999 WL 1009518, at *4 (10th Cir. Nov. 8, 1999) (citing *Estelle*, 502 U.S. at 67-68). Only "a state court's arbitrary disregard of the state sentencing law . . . may violate the defendant's due process rights." *Id.* (citing *Hicks*, 447 U.S. at 346; *see Johnson v. Mullin*, 505 F.3d 1128, 1131 (10th Cir. 2007) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state-law questions.").

Here, there was no arbitrary disregard of Oklahoma's sentencing law. Petitioner agreed to Condition No. 17 "as consideration for imposition of a probated sentence," Second Hearing Tr. at 54, and "knew[] that Judge Watson told [him] not to have any relationship or socialize in any way with a person that has children in their custody" but "decided to forego what the Court told [him]." *Id.* at 59, 62. He "was at all times serving but one sentence on one judgment," *Crowels*, 675 P.2d at 453, and "[u]ntil that suspended sentence has been fully served, a defendant remains under the jurisdiction of the trial court with the sentence subject to revocation." *Demry*, 986 P.2d at 1147.

Petitioner fails to demonstrate constitutional error in the first claim of his first ground for habeas relief.

### b.    Probation conditions were vague.

Petitioner's second claim is that "the probation conditions were unconstitutionally vague and overbroad on their face and as applied to him." Doc. 1, at 7. The OCCA rejected this claim on direct appeal:

> [Petitioner] also argues in Proposition I that rules of his Special Probation Conditions for Sex Offenders are unconstitutionally vague as well as overbroad, and failed to give fair warning they could be violated even though he was incarcerated. [Petitioner] hasn't established that constitutional due process doctrines of vagueness and overbreadth can or should apply to rules and conditions imposed on an individual probationer. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761-62, 36 L.Ed.2d 656 (1973) (due process requirement in a revocation hearing should not be equated to those in a criminal prosecution in any sense, and those enumerated requirements do not include vagueness and overbreadth principles). Moreover, [Petitioner] committed one of the same violations for which his suspended sentence was previously revoked in part. *See Demry, supra*, 1999 OK CR 31 at ¶¶ 20, 21, 986 P.2d at 1148. He cannot claim he didn't have fair notice that his conduct was forbidden, especially when he was specifically told by the District Court not to engage in the conduct. *Papachristou v. Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

Doc. 2, Ex. 1, at 5-6.

In this Court, Petitioner contends Condition No. 17 is unconstitutionally vague on its face, and Condition Nos. 16 and 17 conflict, "rendering [his] conditions of probation unconstitutionally vague." Doc. 2, at 39. He claims Condition No. 17 "is unconstitutionally vague, or at least

unconstitutionally vague as applied to him, violating his right to due process." *Id.* As previously noted, Petitioner did not appeal his conviction or his sentences – including the conditions of those sentences and their constitutionality.

Pertinent to this Court's scope of review, both Petitioner, Doc. 19, at 6-7, and Respondent, Doc. 12, at 22, assert that under the Supreme Court's decision in *Douglas v. Buder*, 412 U.S. 430, 432 (1973), "due process requires" that a defendant "receive fair warning of what conduct constitutes a violation" of a condition of a suspended sentence. Neither disputes that "[t]he conditions imposed must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see* Doc. 12, at 22; Doc. 19, at 7. And, both concur that "[o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *see* Doc. 12, at 22; Doc. 19, at 9. These "challenges . . . are examined in light of the facts of the case at hand . . . ." *Maynard*, 486 U.S. at 361.

Here, Petitioner agreed to various conditions, including Condition No. 17, as consideration for Judge Watson's imposition of a probated sentence, and he had fair notice that Condition No. 17 prohibited a relationship with

20

Ms. Wood while incarcerated. In explaining his decision to partially revoke the suspended sentences at the first revocation hearing, Judge Watson told Petitioner it was because he would not follow the rules and that he had failed to do so while free after sentencing or after "they put you in jail . . . ." First Hearing Tr. at 34. Judge Watson specifically advised him that even though he may not be a threat to children, "the law says that as a sex offender you cannot have a relationship with a person who has minor children." *Id.*

Put in the context of Petitioner's challenge, Judge Watson notified Petitioner he was revoking five years of his suspended sentences because of his conduct – having a relationship with a person who has minor children – both after sentencing *and in jail. Id.* at 33-35. Judge Watson also told Petitioner, "I've got 15 more years to send you back when you don't follow the rules." *Id.* at 34-35. Petitioner was provided with fair notice of the consequence of continuing to engage in this same prohibited conduct.[9] *See Douglas,* 412 U.S. at 432; *Maynard,* 486 U.S. at 361; *Grayned,* 408 U.S. at 108.

---

[9] Judge Bass-LeSure found that Petitioner's conduct evidenced his notice. Addressing Petitioner, she stated that after "Judge Watson told you not to have any relationship or socialize in any way with a person that has children in their custody," "you went through great lengths to hide the fact that you were talking to [Ms. Wood]." Second Hearing Tr. at 59-60. She then concluded that "looking at the totality of it you knew you were in violation of [Condition No. 17]." *Id.* at 60.

21

Petitioner fails to demonstrate constitutional error in the second claim of his first ground for habeas relief.

## 2. Ground Two – Insufficient evidence.

Petitioner generally maintains "the evidence was insufficient to warrant revocation of [his] suspended sentences." Doc. 1, at 8. The OCCA denied Petitioner's insufficiency of the evidence claim on direct review, and summarily found:

> In Proposition II, the Appellant first argues that the evidence presented at his revocation hearing merely showed that he corresponded with Wood and that such correspondence is insufficient to establish a violation of Rule 17 of his Special Probation Conditions for Sex Offenders. Appellant not only corresponded with Wood, but also visited with her while incarcerated. Appellant had been specifically told by Judge Watson at the January 8, 2010, revocation hearing that he cannot have a relationship with a person who has minor children. A plethora of evidence properly presented at the revocation hearing showed that Appellant and Wood had a romantic relationship. Appellant also argues that there was no evidence that Wood actually exercised custody of her children and that Judge Bass Lesure used an erroneous standard of proof. Appellant did not make specific objections on these issues in District Court proceedings and thus the issues have not been properly preserved on appeal. *Young, supra.* In any event, contrary to Appellant's argument there was significant evidence Wood exercised custody of her children, including Wood's divorce decree; letters sent to the girls at Wood's residence; pictures of the girls with Wood, etc. Moreover, the comments by Judge Bass Lesure of which Appellant complains, when read in context, show that Judge Bass Lesure was not using an erroneous standard of proof, but commenting that a little bit of the plethora of evidence presented would have been sufficient to revoke.

Doc. 2, Ex. 1, at 7.

Specifically, Petitioner contends in this Court that he was denied due process because "the State merely showed that Petitioner corresponded with Ms. Wood while incarcerated." Doc. 2, at 59. He states the standard of proof required to "warrant revocation" under Oklahoma law is a preponderance of the evidence but claims the State failed to meet that burden. *Id.*; *see United States v. Cantley*, 130 F.3d 1371, 1376 (10th Cir. 1997) ("Oklahoma law requires the State to prove 'by a preponderance of the evidence that the terms of the accused's suspension [have] been violated.'") (quoting *Fleming v. Oklahoma*, 760 P.2d 206, 207 (Okla. Crim. App. 1988)). He explains Condition No. 17 "prohibited [him] from dating, socializing, or entering into a romantic or sexual relationship with any person who has children under the age of eighteen (18) years present in their residence or custody at any time" and the State, to establish that Ms. Wood was granted joint custody of her children, introduced a copy of Ms. Wood's divorce decree. Doc. 2, at 60. He claims, "[h]owever, there was no evidence that Ms. Wood actually exercised custody of her children from January 8, 2010 through April 19, 2010, the period the State alleged the violations occurred, nor any other time." *Id.* In his reply brief, Petitioner altered those dates, maintaining the State had to present evidence proving Ms. Wood "had custody . . . during the period that the State alleged Petitioner violated his probation, i.e. March 4 – April 16, by making phone calls to Ms. Wood." Doc. 19, at 11-12.

23

Respondent contends Judge Bass-LeSure admitted ample evidence to prove Ms. Wood exercised custody over her own children, including letters from Petitioner to Ms. Wood's daughters sent to the same address he used to correspond with Ms. Wood, and recorded telephone calls between Petitioner and Ms. Wood where it is apparent her children are in her presence during the relevant time period. Doc. 12, at 30-31. In reply, Petitioner insists "[t]here was no competent evidence introduced at the revocation hearing to show that Ms. Wood exercised physical custody of her children, much less at the time of the alleged violations of Rule 17." Doc. 19, at 12.

Federal law governs this Court's determination of whether Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under that law, a revocation decision cannot be "totally devoid of evidentiary support." *Douglas*, 412 U.S. at 432. Due Process requires the State to present "sufficient evidence" to support such a decision. *Black*, 471 U.S. at 615-16. Petitioner acknowledges this standard, but argues that "[n]one of the evidence presented at the hearing is sufficient to support the court's finding of a probation violation." Doc. 19, at 14.

In conducting de novo review, the undersigned reviewed the evidence in the record of the second revocation hearing. Ms. Wood's divorce decree evidenced that she and her daughters' father had joint custody of the girls as of February 23, 2010. Second Hearing Tr. Ex. 6. And, it is abundantly

apparent during (1) a March 4, 2010 telephone conversation between Oklahoma County jail inmate Jermaine Collier and Ms. Wood – in which Mr. Collier was also speaking with Petitioner, who was at Mr. Collier's door – and (2) an April 15, 2015 telephone conversation between Petitioner and Ms. Wood, that Ms. Wood's daughters, whom she calls by name, were present in her residence – and custody – at the time. *See id.* Ex. 36, at No. 7 & Ex. 37, at Nos. 2, 6. In addition, on review of the letters Petitioner sent to Ms. Wood's daughters at the same address he used to correspond with Ms. Wood, it is equally apparent that after the partial revocation on January 8, 2010, Petitioner continued to engage in a romantic relationship with Ms. Wood while she had minor children present in her residence or custody. *See* Exs. 20, 21, 23, 24, 25, 26, 27, 28, 29, 30.[10]

On consideration of this evidence, the determination that Ms. Wood had children under the age of eighteen years present in her residence or custody while she and Petitioner were engaged in a romantic relationship was not "totally devoid of evidentiary support." *Douglas*, 412 U.S. at 432. The evidence was more than "sufficient" to support the revocation decision under federal law. *Black*, 471 U.S. at 615.

---

[10] Though Respondent addresses the issue at length, Petitioner does not challenge the fact that he and Ms. Wood were involved in a romantic relationship.

Petitioner's remaining claim is that Judge Bass-LeSure applied the wrong standard of review under state law. Doc. 2, at 61-63. This claim implicates state, not federal, error and is not cognizable on federal habeas review. *Estelle*, 502 U.S. 62, at 67-68.

Petitioner fails to demonstrate constitutional error in his second ground for habeas relief.

### 3.   Ground Three – Improper admission of evidence.

Petitioner contends the revocation court's "improper admission of evidence resulted in prejudice to Petitioner and violated his right to fundamental fairness and due process, and [his] right to confrontation guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution." Doc. 2, at 63. On direct review of Petitioner's various claims of evidentiary error, the OCCA concluded:

> In Proposition III, Appellant claims that improper admission of evidence, including irrelevant and prejudicial hearsay, resulted in prejudice. Most of Appellant's challenges to the admission of evidence, and his confrontation argument, were not met with a contemporaneous objection and have not been preserved on appeal. *Young, supra.* Moreover, "[t]he rules set forth in this [ Oklahoma Evidence] Code [including the hearsay provisions], do not apply in . . . [p]roceedings for . . . sentencing or granting or revoking probation." 12 O.S.Supp.2002, § 2103(B)(2). But, revocation cannot be based entirely upon hearsay evidence. *E.g. Hampton v. State*, 2009 OK CR 4, § 21, 203 P.3d 179, 186. There was a plethora of evidence properly admitted and this revocation was clearly not based entirely upon hearsay evidence. *Id.* Any improper admission of evidence was clearly harmless. 20 O.S.2011, §3001.1. In addition, the report Appellant challenges in

his confrontation argument was prepared after referral by Appellant's counsel prior to his plea. This Court finds the report has substantial guarantees of trustworthiness and has sufficient indicia of reliability to be admitted in this revocation proceeding. *Hampton v. State,* 2009 OK CR 4, ¶ 18, 203 P.3d 179, 185.

Doc. 2, Ex. 1, at 7-8.

In this Court, Petitioner cites Oklahoma law, *Hampton,* 203 P.3d at 186, holding that a revocation cannot be based entirely upon hearsay evidence. Doc. 2, at 64. He claims he was denied the right of confrontation, *id.,* and "the fundamental fairness to which he was entitled" because the evidence at the revocation hearing "consisted completely of hearsay." *Id.* at 66. He relies on the Court's holding in *Gagnon,* 411 U.S. at 786, "that in a revocation hearing a defendant's right to confront and cross-examine witnesses is subject to a determination by the Court that good cause exists for not requiring confrontation." Doc. 2, at 65. He claims he "was denied confrontation, but no such finding was made in his case." *Id.*

Petitioner specifically challenges the admission of Richard Kishur, Ph.D.'s report of his October, 2007 evaluation of Petitioner. *Id.* at 67; Second Hearing Tr. Ex. 10. Citing *Crawford v. Washington,* 541 U.S. 36 (2004), and the Sixth Amendment, Petitioner claims "[t]he admission of this document violated Petitioner's right to confrontation." Doc. 2, at 68. But a revocation hearing is not a criminal prosecution and neither the Sixth Amendment nor the Supreme Court's decision in *Crawford* applies. *See Curtis v. Chester,* 626

F.3d 540, 544 (10th Cir. 2010). Hearsay evidence is admissible in a revocation proceeding if it is "sufficiently reliable." *Id.* at 545. The record reflects the report "was prepared at *defense* counsel's request during the pendency of the blind plea." Second Hearing Tr. at 66 (emphasis added). Petitioner does not contest the report's inherent reliability – as documentary evidence – of Dr. Kishur's findings as of October, 2007. Doc. 19, at 16.

Petitioner also complains that Dr. Kishur's report was outdated and irrelevant, Doc. 2, at 69, and he details other evidence he maintains was improperly admitted over counsel's objections on hearsay, relevance, and prejudice grounds. *Id.* at 69-74. He then summarily concludes he "was denied the fundamental fairness to which he was entitled." *Id.* at 74.

The question is not whether the revocation court's admission of this evidence violated Oklahoma's rules of evidence but "whether the admission of the evidence violated [Petitioner's] federal constitutional rights." *Estelle*, 502 U.S. at 68. It did so only if "the challenged evidence . . . so infused the [revocation proceeding] with unfairness as to deny due process of law." *Id.* at 75. Here, Petitioner's explanation of how the court's admission of this evidence over hearsay, relevance, and prejudice objections falls short of demonstrating how the court's admission of this evidence, under the facts and circumstances of this case, "rendered the [revocation proceeding] so fundamentally unfair that a denial of constitutional rights result[ed]."

*Duckett v Mullin*, 306 F.3d, 982, 999 (10th Cir. 2002) (internal quotation marks omitted).

Petitioner fails to demonstrate constitutional error in his third ground for habeas relief.

### 4.    Ground Four - Judicial bias.

Petitioner claims two of Judge Bass-LeSure's comments at the revocation hearing "show[] she was prejudiced against Petitioner as a result of the suspended sentence imposed on him by Judge Watson at Petitioner's initial sentencing" and contends he "was denied his right to an impartial judge and a fundamentally fair proceeding." Doc. 2, at 74.  He refers to his statement to the court that "[t]he State was clearly not happy with the sentence that I received by Judge Watson" and directs the court to Judge Bass-LeSure's response, "I agree," as evidence of her prejudice.   Second Hearing Tr. at 91.  He also points to this statement:

> Let me tell you, Mr. Leatherwood, you got a gift the first time, because I promise you, if I had been sitting there, there is absolutely no way I would have given you a twenty-year suspended sentence. No way. No way. It's - - it's - - it was beyond violent. There is no way. Now, I'm not going to sit here and lie to you and say I might not have given you a split sentence because that very may well have been warranted had you done some things, gone to Dr. Kishur's program, participated and earned the right to a split sentence, but straight out twenty, absolutely not.

*Id.* at 93-94.  On direct appeal, the OCCA concluded:

29

> [Petitioner] has failed to overcome the general presumption of
> impartiality on the part of judges as to matters before them.
> *Carter v. State*, 1994 OK CR 49, §§ 13, 14, 879 P.2d 1234, 1242.
> We find Judge Bass LeSure was stating an opinion and not
> demonstrating bias and prejudice against [Petitioner]. *T.R.M. v.
> State*, 1979 OK CR 59, § 10, 596 P.2d 902, 905.

Doc. 2, Ex. 1, at 7-8.

Petitioner fails to establish that judicial bias impinged on his due process right to a neutral factfinder. *See Gagnon*, 411 U.S. at 786. He "points to no evidence of actual bias in the record" and fails to "demonstrate that circumstances were such that an appearance of bias created a conclusive presumption of actual bias." *Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). In the first instance, Judge Bass-LeSure only noted her agreement with Petitioner that the State – not she – was unhappy with his suspended sentence, and, in the second, she shared her opinion that based on his crime, he was fortunate to have been given a twenty-year suspended sentence.

Petitioner fails to demonstrate constitutional error in his fourth ground for habeas relief.

### 5. Ground Five – Judicial conflict.

Petitioner also contends that violation of his due process right to an impartial decision-maker amounted to structural error. Doc. 2, at 77. He argues that the Oklahoma County District Attorney's criminal investigation of Judge Bass-LeSure created a conflict. *Id*. He maintains she was being

prosecuted by the same District Attorney's office that was prosecuting Petitioner" when she "stood in the position of deciding whether to revoke all of the remaining 15 years suspended sentences, or just a portion which would not be appealing to the State." *Id.* at 78, 79. On post-conviction appeal, the OCCA agreed with the State district court that "[Petitioner] failed to overcome the general presumption of impartiality and was unable to show that the conduct of the identified judge[] resulted in a fundamentally unfair revocation proceeding." *Id.* Ex. 2, at 6, 7.

In seeking federal relief on this ground, Petitioner refers to the District Court of Oklahoma County docket report in Case No. CF-2011-385, *State of Oklahoma v. Tammy L Bass LeSure*, *id.* Ex. 25, and maintains that Judge Bass-LeSure "was ultimately charged with thirty-three felonies and ultimately resigned and was allowed to plead guilty to two felonies, and was subsequently suspended by the Oklahoma Bar Association." Doc. 2, at 78. The docket report shows the initial filing against Judge Bass-LeSure was not until January 21, 2011, over five months after the second revocation hearing. *Id.* Ex. 25. Petitioner argues "[e]ven if the Judge was unaware of the investigation, or if the investigation was not in progress at the time of the August 3 [2010] hearing, the Judge knew full well that she had committed felonies and was not fit to act as Judge." Doc. 2, at 78. To illustrate this purported knowledge caused Judge Bass-LeSure to "hav[e] significant

31

interest in acquiescing to the district attorney," *id.* he points to the same two

comments he raised in Ground Four and, in addition, maintains:

> [Judge Bass-LeSure] also stated:
>
>> But let me tell you what I'm going to do. Because you were before Judge Watson, right now I'm going to revoke you in full. *But I will tell you this, I will bring you back on judicial review.* There is absolutely no guarantees. *Because usually with this it's not a done deal for me. It's really not.* I don't know if you can get it or not, *but if you do we'll look at it. If you don't it's going to stay revoked in full, period.*

> *Id.*, p. 97-98. (Emphasis added.) But then the prosecutor made the following comment and the Judge switched her position:
>
>> MR. GIEGER: Right. It's when he's in society, just like Dr. Kishur said, if you think for - I don't think for a minute, given his track record, Your Honor that we have any confidence, that just because he can go do what DOC says to do, as soon as he gets out he's going to do what Mike Leatherwood wants to do. Because he's not going to get the treatment he needs at DOC. And you know what, he had a chance for treatment. No. No. He had two chances for treatment. He doesn't want treatment. He wants life on his terms.
>>
>> THE COURT: He's not going to get life on his terms, Mr. Gieger. *And that's the reason why I said, right now I'm with the mind set there's not going to be a judicial review. I'm just letting you know.*"

> *Id.* 98-99. (Emphasis added.)

*Id.* at 79; *see* Second Hearing Tr. at 91, 93-94, 97-99.

As in Ground Four, Judge Bass-LeSure's comments do not establish actual bias or personal interest in the outcome of Petitioner's revocation proceeding. Judge Watson voiced this same frustration with Petitioner's attitude when he revoked the first five years of the suspended sentences:

> [Y]ou need to go and see what happens to people who go to the penitentiary. That's what you need to do. And if that gets you on the right path, so be it. If it doesn't, you'll get out and I've got 15 more years to send you back *when you don't follow the rules*. I'm not having this kind of hearing ever again after you get this five. I'm not having it again, because if you do you're going for the 15 . . . ."

First Hearing Tr. at 34-35 (emphasis added). Nothing about these comments suggests that Judge Bass-LeSure was less than neutral. And, even if, as Petitioner claims, "the Judge knew full well that she had committed felonies and was not fit to act as Judge," Doc. 2, at 78, "any biasing influence from the circumstances here was too remote and insubstantial to create a presumption of bias." *Fero*, 39 F.3d at 1480.

Petitioner fails to demonstrate constitutional error in his fifth ground for habeas relief.[11]

---

[11] In passing, Petitioner states, "This claim was properly raised on post-conviction, and requested an evidentiary hearing. Exhibit 9, p. 20. Petitioner attached non-record materials in State Court, as he does here, and requests an evidentiary hearing on this issue." Doc. 2, at 77.

Petitioner's Ex. 9 is his application to the OCCA "for an evidentiary hearing on his Sixth Amendment claims of ineffective assistance of counsel." Doc. 2, Ex. 9, at 1. The section of that motion to which Petitioner directs this

## 6.    Ground Six – Ineffective assistance of counsel.

To prevail on an ineffective assistance of counsel claim, Petitioner must show (1) his counsel's performance was deficient and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In applying the first *Strickland* prong, there is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance . . . ." *Id.* at 689. Regarding prejudice, Petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner claims his counsel provided ineffective assistance in following instances.

---

Court contains his claims regarding Judge Bass-LeSure's alleged judicial conflict – substantially the same claims he raises in this Court. *Id.* at 20-24. In that motion, Petitioner asked the OCCA to supplement the record with attached exhibits – totaling in excess of 170 pages – and to remand his case for an evidentiary hearing, maintaining that the exhibits "are necessary to [that] Court's assessment of Petitioner's claims raised herein." *Id.* at 24. Petitioner leaves this Court to speculate in what way the materials support his claim that his due process right to an impartial decision-maker was compromised in this case. As such, and based upon the undersigned's review of both these materials and the evidence of record, Petitioner fails to show that he is entitled to habeas relief on this ground and that an evidentiary hearing is warranted. *West v. Commandant*, 82 F. App'x 636, 638 (10th Cir. 2003) (holding that petitioner was not entitled to an evidentiary hearing in a § 2241 action because "his allegations, if proved, would not warrant relief") (citing *Medina v. Barnes*, 71 F.3d 363, 366 (10th Cir. 1995) (in a § 2254 action, holding that to be entitled to an evidentiary hearing, "a petitioner must first make allegations which, if proved, would entitle him to relief")).

a. Counsel "[f]ail[ed] to properly preserve Petitioner's claim that [Condition No.] 17 could not be violated while Petitioner was incarcerated." Doc. 2, at 81.

Petitioner submits that "[s]hould this Court determine that counsel waived his objection that Probation Rule 17 cannot be violated while incarcerated, then counsel rendered ineffective assistance of counsel as a result of that failure." *Id.* at 81-82. As no finding of waiver has been made regarding Petitioner's Ground One claim, the undersigned does not reach this conditional ineffective assistance of counsel claim.

b. Counsel "[f]ail[ed] to object to the admission of the evaluation report of Dr. Kirshur on grounds that admission of same violated Petitioner's constitutional right to confrontation and a fundamentally fair trial." *Id.* at 82.

i. Constitutional right to confrontation.

Petitioner reurges his Ground Three claim "that the admission of the evaluation report of Dr. Kishur resulted in a violation of his constitutional right of confrontation," and maintains his counsel's failure "to raise this particular objection to the admission of this evidence . . . constituted ineffective assistance of counsel." *Id.*[12] He cites two decisions considering the

---

[12] On direct appeal, the OCCA rejected Petitioner's claims that "his counsel was ineffective for not making contemporaneous objections on the issues he asserts above." Doc. 2, Ex. 1, at 9. The OCCA determined that "[a]s addressed in each of the propositions above, [Petitioner] has not established

right to confrontation in a criminal prosecution, *Crawford,* 541 U.S. at 52, and *Melendaz-Diaz v. Mass.*, 557 U.S. 305 (2009), and asserts the report "was testimonial in nature and its admission violated [his] right to confrontation." Doc. 2, at 82.

Under Oklahoma law, however, "a probationer's right of confrontation is not the same as that granted defendants under the Sixth Amendment of the U.S. Constitution in criminal prosecutions . . . ." *Hampton*, 203 P.3d at 183 (citation omitted). "[A] probationer's right of confrontation and cross-examination is not absolute, and . . . there are instances in revocation proceedings when a trial court, consistent with due process, can allow evidence of an out-of-court statement without the declarant being present for cross-examination." *Id.* at 184. The OCCA explicitly held "the substantial trustworthiness test is a procedure upon which Oklahoma trial judges may rely in deciding when hearsay evidence can be considered over an objection to a probationer's right of confrontation." *Id.* at 185.[13] And, while Petitioner

---

that the outcome of his revocation proceeding would have been different or that he has been prejudiced." *Id.*

[13]    As stated in the federal law analysis of Petitioner's Ground Three claim, a revocation hearing is not a "criminal prosecution[]" and neither the Sixth Amendment nor the Supreme Court's decision in *Crawford* applies. *Curtis*, 626 F.3d at 544 (quoting U.S. Const. amend. VI). Hearsay evidence is admissible in a revocation proceeding if it is "sufficiently reliable." *Id.* at 545.

submits in conclusory fashion that "[t]he report should have not been admitted even under the relaxed standards used in revocation hearings," he does not argue that it lacked substantial guarantees of trustworthiness or fault his counsel for failing to object to the admission of the report on that basis. Doc. 2, at 82.

Petitioner's contention that the admission of Dr. Kishur's report violated his constitutional right to confrontation lacks merit and Petitioner has not shown his counsel's failure to object to the admission of the report on that ground was prejudicial. There is not "a reasonable probability" that, had counsel objected to the admission of Dr. Kishur's report on Sixth Amendment grounds, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### ii.    Failure to offer evidence.

In further regard to Dr. Kishur's report, Petitioner contends his counsel "failed to introduce a later letter written on October 20, 2008, by Michael H. McPherson, M.A., M.H.R,. Licensed Professional Counsel with Kishur & Associates." Doc. 2, at 83. He quotes that letter and maintains it "contained substantial information regarding the successes in Petitioner's treatment and would have contradicted the outdated and prejudicial information provided to the Court at the revocation hearing, and the failure to make the Court aware of the information prejudiced Petitioner." *Id.* By footnote, he explains that

Mr. McPherson's "letter was attached to Petitioner's application for evidentiary hearing on direct appeal as Exhibit 1" and states, "He requests an evidentiary hearing in this Court on that issue." *Id.* n.23.

To support his request, Petitioner repeats Judge Bass-LeSure's reference to Dr. Kishur's program and to Petitioner's lack of commitment to that program:

> Let me tell you, Mr. Leatherwood, you got a gift the first time, because I promise you, if I had been sitting there, there is absolutely no way I would have given you a twenty-year suspended sentence. No way. No way. It's – it's – it was beyond violent. There is no way. Now, I'm not going to sit here and lie to you and say I might not have given you a split sentence because that very may well have been warranted had you done some things, *gone to Dr. Kishur's program, participated and earned the right to a split sentence,* but straight out twenty, absolutely not.

*Id.* at 83-84; Second Hearing Tr. at 93-94.

The OCCA rejected Petitioner's request for an evidentiary hearing on direct appeal:

> Appellant has submitted an application for evidentiary hearing on his ineffective assistance of counsel claims. Appellant claims his counsel was ineffective for failing to present a letter as evidence, which he claims would have supported his confrontation argument. This Court finds that Appellant has not shown by clear and convincing evidence that there is a strong possibility revocation counsel was ineffective for failing to utilize or identify the complained-of evidence. Rule 3.11(B)(3)(b)(i), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011). Therefore, the application for evidentiary hearing is **DENIED.**

Doc. 2, Ex. 1, at 9.

Mr. McPherson's letter, the only evidence Petitioner suggests he would offer at an evidentiary hearing to establish ineffective assistance of counsel, would not entitle him to habeas relief on that ground. Petitioner argued in Ground Three that Dr. Kishur's "report had an impact on Judge Bass-Lesure, evidenced by her" quoted statement. Doc. 2, at 69. But Judge Bass-LeSure's statement regarding Petitioner's lack of commitment to Dr. Kishur's program – the alleged "impact" – would not have been prompted by Dr. Kishur's Psychosexual Evaluation Report written in October, 2007, over eighteen months before Petitioner's plea and sentencing in May, 2009. Second Hearing Tr. Ex. 10. This is evident because Dr. Kishur wrote nothing in that report to indicate Petitioner was anything other than a fully active, committed participant as of that date:

> Mr. Leatherwood has been involved in individual counseling to address his difficulties. He has participated regularly since June 2007 and is involved in our anger management/domestic violence curriculum. There is no sign of ongoing alcohol consumption. There is no indication of additional physically aggressive behavior to date. His progress is adequate. Mr. Leatherwood continues in our program at his request.

*Id.* Ex. 10, at 10.[14] This completely follows what Petitioner represents Mr. McPherson wrote about Petitioner's participation in October, 2008, one year later:

---

[14]    The record reveals that Judge Bass-LeSure's focus was on Petitioner's statement in a February 24, 2010, letter to his mother in which he wrote, "Dr.

39

> Mr. Leatherwood is doing all the things necessary to reduce and maintain a low risk status. As you are aware, consistent and active participation in treatment is recognized as a major predictor of positive outcome and low risk for sexual recidivism.

Doc. 2, at 83.

Because Dr. Kishur's report would not have prompted Judge Bass-LeSure's statement about Petitioner's lack of commitment to Dr. Kishur's program, Petitioner has not demonstrated his counsel's "failure to make the Court aware" of Mr. McPherson's remarks consistent with those of Dr. Kishur on that issue was prejudicial. *Id.* There is not "a reasonable probability" that, had counsel introduced Mr. McPherson's report into evidence, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. So, the evidence Petitioner would submit at a hearing would not entitle him to habeas relief on this ground, and the undersigned recommends denial of his request for an evidentiary hearing in this Court. *West*, 82 F. App'x at 638; *see Medina*, 71 F.3d at 366.

---

Kishurs program is a bucket of crap" and further stated that "I have no doubts that my continued involvement in Dr. Kishur's program will result in my ultimate failure!" Second Hearing Tr. Ex. 11, at 5, Ex. 12, at 2; *see also* Second Hearing Tr. at 86-87.

c. Counsel's "[f]ailure to object to the admission of substantial hearsay evidence deprived Petitioner of his constitutional right to confrontation and a fundamentally fair proceeding." Doc. 2, at 84.

Petitioner faults his counsel for failing to make hearsay objections to the admission of evidence at the revocation proceeding. *Id.* He correctly maintains under Oklahoma law, that "while the relaxed standards applicable to a revocation hearing allow out-of-court statements that bear 'substantial guarantees of trustworthiness without violating a defendant's right of confrontation[,]' the evidence presented at a revocation hearing 'cannot be based entirely upon hearsay evidence.'" *Id.* (quoting *Hampton*, 203 P.3d at 186).

The record reveals that Judge Bass-LeSure did not base her decision to revoke exclusively on hearsay evidence. Rather, she elected to examine Petitioner both regarding the alleged violation and punishment. Second Hearing Tr. at 53-63, 85-102. Petitioner provided direct proof of his relationship with Ms. Wood when, referring to Ms. Wood and his phone calls to her from jail, he testified about his "conversation with someone that I adored." *Id.* at 60. Though claiming it was his attempt at privacy, not deceit, he acknowledged he "went through great lengths to hide the fact" that he was talking with Ms. Wood by using the identities of other jail inmates. *Id.* at 59-60; *see id.* at 60-62.

41

The "revocation [was not] based entirely upon hearsay evidence." *Hampton*, 203 P.3d at 186. Petitioner has not demonstrated his counsel's failure to object to the admission of evidence on hearsay grounds was prejudicial. There is not "a reasonable probability" that, had counsel objected to the admission of evidence on hearsay grounds, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

> **d.** **"Defense counsel rendered ineffective assistance of counsel for failing to object to the bias shown by the trial court."** Doc. 2, at 84.

As addressed in the analysis of Petitioner's Ground Four claim, there is no merit to his assertion he was denied "his right to an impartial judge . . . ." *Id.* Petitioner has suffered no prejudice. There is not "a reasonable probability" that, had counsel objected to the alleged bias, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

> **e.** **Counsel "[f]ail[ed] to object to revocation due to insufficient evidence that Ms. Wood had children in her residence or custody."** Doc. 2, at 85.

As addressed in the analysis of Petitioner's Ground Two claim, there is no merit to his assertion that "there was insufficient evidence that Ms. Wood actually exercised custody of her minor children during the time frame between January 9, 2010 and the filing of the application to revoke on April

16, 2010. (O.R. 151)[.]" *Id.*[15] Ms. Wood's divorce decree evidenced her joint custody of her daughters during this period and record evidence of two telephone conversations between Petitioner and Ms. Wood during this same period evidenced her exercise of that custody. As found in Ground Two, this evidence satisfies the federal standard of proof. And, it equally meets Petitioner's proffered definition of Oklahoma's preponderance of the evidence standard: "that which is of great[er] weight and, further, which could have been deemed more probably true than not." *Id.* at 62 (quoting *Cooper v. State*, 599 P.2d 419, 422-23 (Okla. Cr. App. 1979) (internal quotation marks omitted)). Petitioner has suffered no prejudice. There is not "a reasonable probability" that, had counsel objected to the revocation on the grounds of insufficient evidence "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

> **f.     Counsel's [f]ailure to object to the defense court's erroneous standard of proof."** Doc. 2, at 85.

Petitioner also claimed in Ground Two that Judge Bass-LeSure applied the wrong standard of review under state law by stating that preponderance of the evidence *"means a little bit." Id.* at 62 (quoting Second Hearing Tr. at 63) (emphasis added by Petitioner)); *see id.* at 61-63. He now claims that

---

[15]     As in Ground Two, Petitioner's identification of these dates is fluid.

"[c]ounsel's failure to object to this definition of the standard of proof constituted ineffective assistance of counsel." *Id.* at 85.

The record shows that Judge Bass-LeSure plainly found the revocation application to be supported by a preponderance of the evidence, the correct standard of proof under Oklahoma law. Second Hearing Tr. at 63. She then commented on the abundance of the State's evidence: "That means a little bit. One of those phone calls was enough for me. Just one . . . ." *Id.* Petitioner has not been prejudiced. There is not "a reasonable probability" that, had counsel objected on grounds that Judge Bass-LeSure was applying an erroneous standard of proof under Oklahoma law, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

> g. **"Failure of counsel Josh Welch to appear at the August 3, 2010 revocation hearing and hearing on motion to modify sentence."** Doc. 2, at 85.

Petitioner contends he was denied ineffective assistance of counsel at the August 3, 2010 revocation proceeding where he was represented by attorney Scott Adams, the same attorney who represented him at his plea and sentencing. *Id.* at 85; OR 11-28. Petitioner claims Josh Welch, one of the attorneys who represented him at the first revocation hearing, First Hearing Tr. at ii, "had been hired to represent him and was familiar with his case," but "failed to appear" at the second revocation hearing. Doc. 2, at 87, 86. Petitioner claims the outcome of the revocation hearing would have been

different had the court heard "arguments regarding the inapplicability of the conditions of probation, as well as the unconstitutionally vague and overbroad conditions" from Mr. Welch. *Id.* at 87. Petitioner states he "requested an evidentiary hearing on this claim [to the state courts] and provided materials outside the record, but was denied a hearing. He requests a hearing in this Court as well." *Id.*

The two arguments Petitioner references are the arguments he pressed in Ground One. They are meritless, whether made by Mr. Welch, by Mr. Adams, or by any attorney. Petitioner fails to demonstrate that under the facts and circumstances of this case, any failure by counsel to present these arguments was prejudicial. *See id.* at 83. There is not "a reasonable probability" that, had counsel made these arguments, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The evidence Petitioner would submit at a hearing would not entitle him to habeas relief on this ground, and the undersigned recommends denial of his request for an evidentiary hearing in this Court.

Petitioner fails to demonstrate constitutional error in his sixth ground for habeas relief.

### 7. Ground Seven – Cumulative error.

Petitioner asserts that even if the individual errors he raises do not merit reversal, "the combined effect of these errors deprived him of due

process and a fundamentally fair proceeding which requires reversal of the revocation of his suspended sentences." Doc. 2, at 88. The OCCA denied this claim on direct appeal, finding that "[t]his Court has repeatedly held that a cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by Appellant." *Id.* Ex. 1, at 9.

"In the federal habeas context, cumulative-error analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,' an analysis . . . undertake[n] only if there are at least two errors." *Fairchild v. Trammell*, 784 F.3d 702, 724 (10th Cir. 2015) (quoting *Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013)). On de novo review, the undersigned has concluded that Petitioner has demonstrated no constitutional error and, so, fails to "implicate cumulative-error analysis." *Lott*, 705 F.3d at 1223.

## III.    Recommendation and notice of right to object.

For the stated reasons, the undersigned recommends the denial of the petition, Doc. 1, the motions to supplement the petition, Docs. 21, 27, and Petitioner's requests for an evidentiary hearing. Doc. 1, at 89.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court on or before February 4, 2016, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).

The undersigned further advises that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

ENTERED this 15th day of January, 2016.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE